Bradley v. Bradley.

————◦◦◦————

BRADLEY *et al.*, Defendants in Error, v. BRADLEY *et al.*, Plaintiffs in Error.

1. A will was executed in the following form: "I, A. B., of, &c., do, &c., make this my last will and testament in manner and form following, to-wit: first, that all my just and lawful debts be paid; second, that my wife, C.

D., be my sole heir to all my estate remaining on hand after the payment of my just debts, real and personal, to-wit: lands, negroes, horses, cattle, hogs, sheep, farming utensils, household and kitchen furniture, money and effects. Given under my hand this day and date above written." *Held*, 1st, that the children of A. B. were *not named or provided for* in this will within section eleven of the act concerning wills (R. C. 1845, p. 1080); that consequently he died intestate as to such children; 2d, that evidence is not admissible to prove that at the time of making the will the testator declared, that he would name no other persons in his will—that he had done all for his children he intended to do—and that he designed all he had at his death to go to his wife absolutely.

*Error to Callaway Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*Gardenhire* and *Ansell*, for plaintiffs in error, cited 11 S. & R. 289; 12 id. 131; 15 id. 219; 14 id. 311; 11 Wheat. 59; 10 Mass. 385; R. C. 1845, p. 1086, § 51; Block v. Block, 3 Mo. 407; Wilder v. Gross, 14 Mass. 357; 1 Mass. 165; Wild v. Brown, 2 Mass. 569; Church v. Crocker, 3 Mass. 17; Guitar v. Gordon, 17 Mo. 411; 2 N. H. 699; 1 Terr. Laws, 125, 132, (1807); p. 405, (1815); p. 787, 1821); R. C. 1825, p. 795; R. C. 1835, p. 620; R. C. 1845, p. 1080; Wigram on Wills, 51; Dessaus. Eq. 506; 6 Metc. 400.

*Young*, *Harden* and *Morrow*, for defendants in error, cited Guitar v. Gordon, 17 Mo. 411; 14 Mass. 357; Tucker v. Barton, 18 Pick. 162; 6 Metc. 400; 1 Jarman on Wills, 146; Gregory v. Cowgill, 19 Mo. 415; Goode v. Goode, 22 Mo. 518.

RYLAND, Judge, delivered the opinion of the court.

This is a petition by the plaintiffs, part of the children and heirs of Thomas P. Bradley, deceased, against the widow and others, children and heirs of said Thomas P. Bradley, in order to have dower in the estate of said Bradley assigned to his widow. The petition sets out the will of said Thomas P. Bradley, deceased; and avers that he left real estate to the value of

$1500, and slaves to the value of $5000 and upwards, and other assets.  The petitioners allege that said Thomas P. Bradley omitted to mention the names of his children and heirs in his said will, and failed to make any provision for them ; and alleges that said Bradley died intestate as respects his said real estate and slaves and his said children ; and prays that dower may be assigned in the estate to his said widow, Ann Bradley.

The infant defendant Franklin P. Bradley answered by his guardian *ad litem*, duly appointed, denying that he and his co-defendants held said premises together with the petitioners. The defendant Ann Bradley answered, stating that the petitioners' ancestor made his will and died ; that the will was proved ; that the exhibit made in the petition is a true copy of the said will.  She denies that the testator failed to name and provide for his children in his will ; denies that he died intestate as to any of them.  On the contrary, she states that she is informed and believes that all his children are named and provided for in the said will ; and that the said will is valid under the laws of this state as against his children.  This she says is a question of law to be submitted to the court upon the facts admitted and to be proved.  She denies all right of the petitioners in and to the estate of the deceased, and says that she is the sole and exclusive owner of all the land that the testator had at his death ; that she is the sole tenant thereof, and that none of the other parties to this suit have any interest in it.

The following is a copy of the will : " I, Thomas P. Bradley, of the county of Callaway, and state of Missouri, do on this 10th day of June, in the year of our Lord one thousand eight hundred and fifty-three, make this, my last will and testament, in manner and form following, to-wit : First, that all my just and lawful debts be paid ; second, that my wife Ann Bradley be my sole heir to all my estate remaining on hand after the payment of my just debts, real and personal, to-wit : lands, negroes, horses, cattle, hogs, sheep, farming utensils, household and kitchen furniture, money and effects.  Given under my hand this day and date above written.  Thomas Poe

Bradley.    Test : Thomas B. Harris, William Houp, William B. Swon."

The trial of the issue was submitted by consent of the parties to a jury ; and after the defendants had read to the jury the will of Thomas P. Bradley, as above set forth, they offered to prove by the draftsman of the will that the said testator, at the time of making his will, declared that he would name no other person in his will ; that he had done all for his children he intended to do ; and that he designed all he had at his death to go to his wife absolutely.    To this evidence the plaintiffs objected, and the court sustained the objection, and excluded the evidence, and the defendants excepted.

The plaintiffs asked the following instruction : " That the will read in evidence makes no provision for the children and heirs of Thomas P. Bradley ; nor is either of them named in said will, and by the laws of this state said Thomas P. Bradley died intestate as to said children ; and said children and heirs are entitled to partition of his property as if he had died without having made a will."    This instruction the court gave, and the defendants excepted.

The defendants asked for several instructions, which the court refused to give, and which are deemed of no importance in deciding the questions now before the court.    The questions on the record are principally two : Did the court err in rejecting the testimony of the defendants in relation to the declarations of the testator that he would name no other person in his will—that he had done all for his children he intended to do— and that he designed all he had at his death to go to his wife absolutely ?    And lastly, Did the court err in giving the plaintiffs' instructions to the jury ?

The testimony offered by the defendants was properly excluded.    Its effect was to make by parol a will for the testator. Admit such testimony, and the will is made in court by the witnesses, and not in writing by the testator as the statute requires.    In Gregory v. Cowgill, 19 Mo. 415, the court below rejected evidence of the declarations of Robert Sinclair, the

testator, showing that by his will he intended to give his wife a power of disposal over his entire estate, both real and personal. This was excepted to, and assigned for error in this court. This court held, "that on no principle were the declarations of the testator admissible to explain the meaning of his will." None of the circumstances were present which influence courts to admit parol evidence to give effect to a bequest or devise. Parol testimony as to the declarations of a testator can not be given in evidence to control the language of a will, or give to it a different effect from that which it plainly imports; and wherever the words of a will are plain and obvious in their terms, they would exclude all evidence of declarations of the testator tending to show his real purpose to have been other than that apparent upon the face of the will. On the other hand, latent ambiguities, as to the person or the devise, may be removed by the aid of parol evidence. (6 Metc. 405.) The legal effect of a will can not be changed or varied by admitting evidence of the testator's declarations. (Farrar v. Farrar, 5 Pick. 409; Mann v. Mann's Exec'r, 1 Johns. Ch. 231; 14 Johns. 1; Wigram on Wills, 73.) Thompson, Ch. Justice, in the case of Mann v. Mann's Exec'r, (14 Johns. 9,) said, "that the intention of the testator is to be sought after and carried into effect; that such intention is to be collected from the will itself, unaided by any extrinsic evidence, except in the case of *latent ambiguity*, or to rebut a resulting trust; and that no parol evidence is admissible to contradict, enlarge or vary the words of a will, are general rules so well settled that they may be assumed as elementary principles of law." " It is conceived that there is in principle an objection to the reception of the declarations of intention. When a person executes a written instrument, (whether a will or deed or written agreement,) he must be supposed to express and embody in the instrument all he has to say of his intention. Thenceforward his intention is to be collected only from the instrument; reference also being allowed, when necessary, to surrounding material facts and existing circumstances. Facts may of course be referred to for

explaining an ambiguity, and proving the intention, so far as they can be applied for that purpose, consistently with the language of the instrument; but the party himself ought not to be allowed to add any thing in the way of explanation, or for declaring his intention; all he had to say of his intention, he must be supposed to have conclusively said when he executed the instrument. This, it is conceived, is the principle of common law and of sound reason, applicable alike to all written instruments; and the ground and reason on which the principle is founded must obviously be on account of the great danger and inconvenience which would result from evidence of declarations, well described by Lord Coke as ' the nude averments of parties, to be proved by the uncertain testimony of slippery memory.' If declarations are alleged to have been made at the time of executing the instrument, the danger is that they may be mistaken or misunderstood or misrepresented, or possibly altogether an invention. If they are alleged to have been made before or after that time, what complete assurance have we, in all cases, that the intention of the party, at the time of executing the instrument, was the same as before that time, or had not been altered afterwards?" (2 Phil. Ev. ch. 7, p. 331.)

The will of Thomas P. Bradley presented no case of ambiguity of any sort; and there is no resulting trust arising thereon. It was then very properly decided by the court below in ruling out the proposed evidence. There was no ground for its admission; and it was warranted, as we conceive, by no principle or rule of law.

The answer to the second question depends upon our statute. By the statute of the territory of Louisiana, concerning wills, descents and distribution, which went into force on the 1st of September, 1807, it was declared by the 22d section, that, " Where any person shall make his or her last will and testament, and omit to mention the name of any child or children, or afterward shall marry or have a child or children not provided for in any such will, and die leaving a widow and child, or

either widow or child, although such child be born after the death of its father, every such person, so far as shall regard the widow or such child or children, shall be deemed to die intestate, and such child or children shall be entitled to such proportion, shares or dividends of the estate, real or personal, of the deceased, as if he or she had actually died without any will," &c. In 1815 the following was the provision on this subject: " Where any person shall make his or her last will and testament, and omit to mention the name of any child or children, if living, or the legal representatives of such child or children, or afterwards shall marry or have a child or children not provided for in such will, and die leaving a widow and child, or either widow or child, although such child be born after the death of the father, every such person, so far as shall regard the widow or such child or children, shall be deemed to die intestate ; and such child or children shall be entitled to such proportion, share and dividend of the estate, real and personal, of the deceased, as if he or she had actually died without will," &c. This section of the law of 1815 was reenacted by the legislature of the state of Missouri in 1821, with little or slight change in its phraseology. In 1825, the legislature made an important change in this provision : " If any person shall make his or her last will and testatment, and die leaving a child or children, or the descendants of any such child or children (in case of their death), not provided for in such will, although such child or children be born after the death of the testator, every such testator, so far as shall regard any such child or children, or their descendants, not provided for as aforesaid, shall be deemed to die intestate ; and such child or children, or their descendants, shall be entitled, &c. ; provided that such child or children, or their descendants so claiming, have not had an equal portion of the testator's estate bestowed on him, her or them, in the testator's lifetime, by way of advancement." Here, for the first time since 1807, the words " not named" or " omit to mention the name of any child or children" are left out, and the proviso about advancement is inserted. Un-

21—VOL. XXIV.

der the act of 1825, the case of Block et al. v. Block et al. arose, and Judge Tompkins dissented from the construction given to it by the other two judges—McGirk and Wash. The majority of the judges thought the difference between the act of 1821, which was the same as the acts of 1807 and 1815, and the act of 1825 was merely in words, not a substantial difference, and that a testator might name his child and bequeath to it the sum of twenty-five cents, and that would be a provision under the act of 1825. Judge Tompkins held, that by omitting the clauses of the acts of 1821, 1815 and 1807, where the testators, if they " omit to mention the names of any child," &c., are declared to die, as to such child, intestate; and retaining the expression " not provided for," the legislature meant a beneficial provision according to the testator's circumstances in life. He asks, why change the phraseology if no change in the meaning was meant? This decision was had at October term, 1834, and at the ensuing session of the legislature, which commenced in November following, the provision was altered to what it now is: " If any person make his last will and die leaving a child or children, or descendants of any such child or children, (in case of their death,) not *named nor provided* for in such will," &c. In 1845, the words are, " not named or provided for in such will." So the legislature turned back in 1834 and '5 to what Judge Tompkins called the old law on this subject, and such has been the law ever since. The statute expressly declares, " If any person make his last will and die, leaving a child or children, or descendants of such child or children (in case of their death), not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, so far as shall regard any such child or children, or their descendants, not provided for, shall be deemed to die intestate; and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them; and all the other heirs, devisees and legatees shall refund their

proportional part." (R. C. 1845, tit. Wills, § 11.) "If such child, &c., shall have had his equal proportion of the testator's estate bestowed on him, in the testator's lifetime, by way of advancement, he shall take nothing under the provisions of the 11th section." (R. C. 1845, tit. Wills, § 12.) Such are the provisions of the statute laws of our state on the subject of this controversy now before us.

The record shows that the testator Thomas P. Bradley died leaving sundry children living at his death. The will does not name or provide for any one of these children. Here is a case directly within the statute. How can we say that the heirs or, in other words, the children of said Thomas P. Bradley, deceased, were in his mind when he made this will? He has not mentioned the names of either one of them. He has not, by terms, provided for them or either one of them. He has not said that he has heretofore given to his children all he intended for them by the terms of this will. The will is silent upon the subject of his children. Nor can this court see any ground to suppose the children of the testator are in his mind when he was making this will. He says that his wife shall be his sole heir to all his estate. Is this equivalent to saying that he has or has not a child? We can not see how this will can be withdrawn from the operation of our statute. Our statute is not like the Massachusetts statute; for this has the provision in it, "unless it shall appear that such omission was intentional and not occasioned by any mistake or accident." (6 Metc. 404.) We are not able to reason ourselves clear from the effect of our statutes by any thing said upon the subject by the Massachusetts courts. Ours is a positive enactment—no proviso to it on account of mistake or intentional omission. If the name of the child is omitted in the will, and no provision made for such child, then the testator must be considered as dying, as to such child, intestate, and such child will be entitled to his proportional share, unless he has been provided for by advancement by the testator in his lifetime; and this previous advancement in the lifetime of the testator is the only thing that will

debar the unnamed and unprovided for child from his share. Had the testator mentioned his children and cut each one off with one cent, we should have sustained the will under our former decisions ; but there is nothing here on which we can for a moment withdraw this will from the operation of the 11th section our statute above cited. We have no grounds on which to say of for a moment that the testator remembered at the time his children. Here is no son-in-law named or called up to memory— no grandson, as was the case in Wilder v. Goss, 14 Mass. 358. And in reading the testator's will in this case, it is not in the power of the court, from the will alone, to say whether the testator had a child living or not, or whether he ever had one. As to the children of the testator the will is a mere blank. In short, were this court to reverse this judgment on account of the instruction which the court below gave to the jury, it would be nothing less than a virtual repeal of the statute. Such is not our province.. To us it belongs only *dicere legem*. Let the judgment be affirmed ; Judge Scott concurring ; Judge Leonard not sitting.