# JOHN COULAM AND OTHERS, Appellants, v. ANN DOULL, Respondent.

Wills—Preterition—Parol Evidence.—Under section 694, Compiled Laws, 1876, providing that "when any testator shall omit to provide in his or her will for any of his or her children, or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned, etc.;" it need not appear from the face of the will itself that the testator intended to exclude them, but if it appear from extrinsic evidence, that the testator has children who are not mentioned in the will, the statute raises a presumption that the testator omitted them through inadvertence or mistake, but this is a disputable presumption which may be rebutted by parol evidence.

Id.—Id.—Certain evidence stated in the opinion held sufficient to show that such omission was intentional.

Appeal from a judgment of the district court of the third district, and from an order refusing a new trial. The opinion states the facts.

*Messrs. Hall & Marshall*, for appellant.

It is the general rule that the intent of a testator must be found on the face of the will, and that extrinsic evidence is inadmissible to show it, the only exceptions being where such evidence is needed to remove a latent ambiguity or to rebut a resulting trust: 1 Jarman on Wills, pp. 708–710 and note; 1 Redfield on Wills, 539; 1 Greenl. Ev. sec. 290; 1 John Ch. 231, *Mann* v. *Mann;* Hawkins on Wills, p, 9; 7 Metc, (Mass.) 188 *Tucker* v. *Seaman's Aid Soc.;* 22 Conn., 526, *Spencer* v. *Higgins;* 55 Ill., 514, *Kurtz* v. *Hibner.*

Our statute on the subject of pretermitted children is an outgrowth of the common law doctrine of the implied revocation of a will by a subsequent marriage and birth of issue.

Under this doctrine it was well settled that no revocation would be implied by law if the testator in his will made any provision, however small, for the future wife and children; such provision furnishing intrinsic evidence that he did not intend the future alteration in his circumstances to work a revocation of his will: 2 East, 541, *Kenebel* v. *Scrafton.*

But if there was no such provision in the will no extrinsic evidence would be admissible to prove such intention, but the revocation took place by virtue of a condition tacitly annexed to the will by the law, independent of the intention of the testator, except as such intention was expressed in the will: 8 Adol. & El. 303, *Marston* v. *Roe;* 2 Greenl. Ev. secs. 684, 685.

And the reason for the exclusion of such evidence is stated in the principal case of *Marston* v. *Roe* to be, that the statute required wills of real estate to be in writing, and that the object of the statute was to prevent the title of real estate from being dependent on "the perplexity and uncertainty of such conflicting evidence."

The same reason has existed here ever since 1852: Sec. (654) p. 265, and sec. (686) p. 271, Compiled Laws of Utah.

In Massachusetts in 1783, a statute was passed containing the following provision: "That any child or children, . . . not having a legacy given them in the will of their father or mother, shall have a proportion of the estate of their parent assigned to him, her or them, as though such parent had died intestate. . . ." It was the well settled construction of this statute in the courts of said state, that although the child had no legacy left him in the will of the parent, still if an intention appeared to omit him appeared, he would not be entitled to any portion of the estate: 18 Pick., 167, *Tucker* v. *Boston;* 6 Metc., 400, *Wilson* v. *Fosket.*

But it was equally well settled that such intention could only be made to appear by intrinsic evidence, and that all extrinsic evidence of such intent was inadmissible (see cases above cited). After this judicial construction the statute was changed so that it provided that an heir for

whom an ancestor omits to provide in his will, is entitled
to a distributive share of the ancestor's estate, unless he
shall have "been provided for by the testator in his life-
time, or unless it shall appear that such omission was in-
tentional, *and not occasioned by any mistake or accident.*"

Under this statute the case of *Wilson* v. *Foskel,* cited
ante, was decided. Iowa adopted the Massachusetts stat-
ute, and adopted with it the judicial construction placed
thereon by the Massachusetts courts: 5 Iowa, 196, *Lorieux*
v. *Keller.*

We submit that unless the Massachusetts cases under
the new statute find their warrant for the admission of ex-
trinsic evidence in the words, "and not occasioned by any
mistake or accident," they are opposed to both principle
and the weight of authority.

It is difficult to conceive how a mistake or accident can
be shown except by extrinsic evidence, and such mistake
or accident as will permit of the child's inheriting, has been
held in Massachusetts to be perfectly consistent with an
intentional omission of the child's name from the will: 101
Mass., 126, *Ramsdill* v. *Wentworth.*

In Missouri the statute is substantially the same as the
Massachusetts statute of 1783, and has uniformly received
the same construction: 24 Mo., 311, *Bradley* v. *Bradley;*
46 Mo., 441, *Burch* v. *Bram;* 48 Mo., 270, *Pounds* v. *Dale;*
51 Mo., 64, *Wetherall* v. *Harris.*

In California, in the case of *Estate of Garraud,* 35 Cal.
336, their statute, of which ours is a copy, first received a
judicial construction, and it was held that the intention of
the testator to omit to provide for his children can only be
gathered from the face of the will, that it could only be
proved by evidence competent to prove any other testa-
mentary intention, and that the acts and declarations of
the testator were inadmissible to prove such intention.

Although evidence of all the circumstances, which sur-
rounded the author of a written instrument, will be re-
ceived for the purpose of ascertaining his intentions, yet
those intentions must ultimately be determined by the *lan-
guage* of the instrument, and no proof, however conclusive
in its nature, can be admitted, with the view of setting up

an intention inconsistent with the known meaning of the writing itself. For the duty of the court in all these cases is to ascertain, not what the parties may have really intended, as contra-distinguished from what their words express, but simply what is the meaning of the words they have used. It is merely a duty of interpretation, and evidence of surrounding circumstances cannot change the legal effect of clear and unambiguous words: 2 Taylor on Ev. sec. 1201 and 1202; 47 N. Y., 606, *Reynolds* v. *Fire Ins. Co.;* 15 Wall., 578, *Partridge* v. *Ins. Co.;* 22 Wall., 105, *Maryland* v. *Railroad Co.;* 55 Ill., 514, *Kurtz* v. *Hibner;* 45 Mich., 350, *Waldron* v. *Waldron;* 3 Jarman on Wills, 700, note (9); 2 Jarman on Wills, 115.

There is no pretense made in this case that the words of the will are not clear and unambiguous.

No intention to omit to provide for the children appears by reason of the adsolute devise to the respondent: 22 Fed. R., 874, *R. R. Co.* v. *Wasserman;* 48 Mo., 270, *Pounds* v. *Dale;* 106 Mass., 320, *Ramsdill* v. *Wentworth;* 44 Cal., 126, *Bush* v. *Lindsay.*

*Messrs. Sheeks & Rawlins,* and *Mr. C. S. Varian,* for the respondent.

A patent ambiguity arises solely from the terms of the instrument, while a latent ambiguity is one not appearing upon the face of the instrument, but developed by extrinsic evidence: 2 Wharton on Evidence, sec. 956.

In the latter case the difficulty introduced by extrinsic evidence may be explained by further evidence on the same subject showing the real intent: *Atkinson* v. *Cummings,* 9 How., 479; *Tillotson* v. *Rice,* 22 N. Y., 122–126.

The will is, in this case, free from any patent ambiguity. Looking at the will alone the intention is clear that defendant should have the property. The doubt, which alone the evidence was admitted to resolve, was created by the fact, extrinsic the will, introduced by appellants, that they were the children of the testator. This fact established *dehors* the will, coupled with the omission of testator in his will to provide for his children, has the effect under

the statute (Com. Laws, sec. 694) to raise the presumption that the testator had made the omission through some inadvertence or mistake, and not intentionally. It was to afford relief to a child in case of actual oversight or mistake, and not to defeat the real intention of the testator, that the statute was enacted: *Church* v. *Crocker*, 3 Mass., 20; *Wilson* v. *Fosket*, 6 Met., 400; *Payne* v. *Payne*, 18 Cal., 291, 203.

But the effect of extrinsic evidence in this case is not to change, alter, add to or control any of the terms of the will. It simply shows that a disputable presumption of mistake which is raised outside the will and contrary to its apparent intention should not prevail; that the intention sufficiently expressed in the will is not spurious but genuine; in other words, that the will is precisely what it purports to be. For such purpose extrinsic evidence is competent and admissible: Stephens' Dig. of Ev., 148; 1 Greenleaf, Ev., sec. 296; Abbott's Trial Ev., pp. 132, 136; Taylor on Ev., secs. 1227, 1229, 1231, and authorities there cited; 1 Williams on Ex., 237, note, s.; *Wilson* v. *Fosket*, 6 Met., 400; *Buckley* v. *Gerard*, 123 Mass., 8; *Peters* v. *Siders*, 126 Mass., 135; *Loring* v. *Moore*, 6 Wall., 350; *Lorieux* v. *Keller*, 5 Iowa, 196, 203.

The cases cited by counsel upon this point are inapplicable, because in each the parol evidence was offered to change the plain meaning of the words used in the will, as that "money" meant "promissory notes" (1 Johnson, Ch. 231); or that while describing one tract of land another was meant (53 Ill., 514), or that by "The Seaman's Aid Society, in the City of Boston," the testator intended, " The Seaman's Friends Society," (7 Met., 188, both existing).

The Missouri cases are not authority under our statute.

The statute in that state was absolute. The court in 24 Mo., 315, says: "Our statute is not like the Massachusetts statute; for this has the provision in it, unless it shall appear that such omission was intentional, etc." (6 Met., 404).

"We are not able to reason ourselves clear from the effect of our statutes by anything said upon the subject by the

Massachusetts courts; ours is a positive enactment, no proviso to it on account of mistake or intentional omission."

Our statute and the statutes of Massachusetts, Iowa and California are in substance, meaning and purpose precisely the same. Massachusetts was the original source from which it was derived and adopted.

Before its adoption in California or here it had received a settled interpretation both in Massachusetts and Iowa, which has also been recognized and adopted before the enactment of the statute in this territory by the supreme court of the United States: 6 Met., 400; 5 Iowa, 196; 6 Wall., 350.

The earlier English authorities and the authorities in this country admit parol evidence to rebut the presumption arising from subsequent marriage and the birth of a child.

Says Kent's Com., 523; "It is generally agreed that the implied revocation by a subsequent marriage, and a child, being founded on the presumption of intention, may be rebutted by parol evidence:" *Brady* v. *Cubitt,* Doug. 31; *Brush* v. *Wilkins,* 4 Johns. Ch., 506.

POWERS, J.:

The appellants brought action in the court below to recover an undivided interest in real estate. Parties plaintiff and defendant claim from a common source of title, viz., one John Coulam, who died testate in 1877. His will reads as follows:

"I, John Coulam, being of sound mind and memory, do make and publish this my last will and testament in manner and form following: I give and bequeath unto my beloved wife, Ann Coulam, all my personal property and real estate, to-wit: the sum of one thousand and twenty-five ($1,025) dollars, held in trust by Wells, Fargo & Co., and now due me from the Hon. William A. Hammill, by note now in my possession. And I also give and bequeath unto my said beloved wife, Ann, my freehold estate known and recorded as lot six (6), block fifty-nine (59), plat "B," Salt Lake City survey, with all the messuages, tenements, and

appurtenances thereunto belonging; and all the rest, residue, and remainder, and all debts accruing to me of my personal estate, goods and chattels, of what kind and nature soever, I give and bequeath the same to my said beloved wife, and I hereby revoke all former wills by me made."

The will was executed, witnessed and published in conformity with the provisions of the statute. The plaintiffs are the children of the deceased, and the will ignoring them, they base their claim to a portion of the property devised upon section 694 of the compiled laws of Utah, which is as follows:

"When any testator shall omit to provide in his or her will for any of his or her children, or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child, or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned as provided in the preceding section."

This statute, found on page 272, Comp. Laws, is conceded to be applicable to the case at bar, and no contest is made over the amount of interest claimed by plaintiffs. The answer makes an issue on advancements, under sections 696 of Comp. Laws of Utah, but this issue, on the trial, was waived by defendant, and the only issue in the case as tried was whether the omission of the testator to provide for his children appeared to be intentional.

On the part of the appellants it is contended that the omission of the testator to provide in his will for his children, by virtue of the statute annexes to the will the condition that the will shall be void, *quoad* the children, unless a contrary intention appears by intrinsic evidence, and that the operation of this rule of law is altogether independent of the intention of the testator, except as that intention may be expressed in the will.

On the part of respondent it is contended that the intention of the testator to omit to provide for his children can be shown by extrinsic as well as intrinsic evidence; and this position was adopted by the learned judge who presided at the trial of this case in the lower court, and in pursuance thereof extrinsic evidence, tending to show the

intent of the testator, was admitted over the appellants' objection, and this ruling of the court furnishes the principal assignment of error in this case.

We do not think the court erred in admitting the evidence. Generally, the admissibility of extrinsic evidence depends upon whether there is, in respect to the written instrument, a patent or a latent ambiguity; such evidence being admitted in case of the latter, but not the former: Greenl. Ev., sec. 297. A patent ambiguity arises solely from the terms of the instrument, while a latent ambiguity is one not appearing upon the face of the instrument, but is developed by extrinsic evidence: 2 Whart. Ev., sec. 956.

In the latter case, the difficulty introduced by extrinsic evidence may be explained by further evidence on the same subject, showing the real intent: *Atkinson* v. *Cummings*, 9 How., 479; *Lillotson* v. *Race*, 22 N. Y., 122–126. The will is, in this case, free from any patent ambiguity. Looking at the will alone, the intention is clear that the defendant should have the property. The doubt, which alone the evidence was admitted to resolve, was created by the fact, extrinsic the will, introduced by appellants, that they were the children of the testator. This fact established *dehors* the will, coupled with the omission of the testator in his will to provide for children, has the effect, under the statute (Comp. Laws, sec. 694), to raise the presumption that the testator had made the omission through some inadvertence or mistake, and not to defeat the real intention of the testator, that the statute was enacted: *Church* v. *Crocker*, 3 Mass., 20; *Wilson* v. *Fosket*, 6 Met., 400; *Payne* v. *Payne*, 18 Cal., 291.

This presumption of mistake is made a disputable one by the express words of the statute, "unless it shall appear that such omission was intentional;" or, as in the statutes of Massachusetts and Iowa, "unless it shall appear that such omission was intentional, and not occasioned by any accident or mistake:" Comp. Laws, 694. The legislation in Massachusetts is really the source of all the statutes of the different states upon the subject. The earlier statute was adopted in Missouri and in some other states, and the

latter, including the qualifying clause above set forth, was adopted in Iowa, California and Utah. In Missouri, the statute was absolute and the presumption conclusive that the child should inherit unless provided for in the will. However, it was held that the presumption did not arise if it could be seen from the will that the child had not in fact been forgotten: *Church* v. *Crocker*, 3 Mass., 20; *Bradley* v. *Bradley*, 24 Mo., 311. If under our statute the matter to repel the presumption must appear upon the face of the will, then the clause "unless it shall appear that such omission was intentional" is superflous. We think that the statute opens the door for the admission of any competent evidence. The effect of extrinsic evidence in a case like the one at bar is not to change, alter, add to, or control any of the terms of the will. It simply shows that the will is what it purports to be, and that the omission of the children was intentional. The cases cited by counsel for appellant upon this point are inapplicable, because in each the parol evidence was offered to change the plain meaning of the words used in the will, as that "money" meant "promissory notes:" *Mann* v. *Executors, etc.*, 1 Johns. Ch. 231; or that while describing one tract of land another was meant: *C. & A. R. R. Co.* v. *Randolph*, 53 Ill. 514; or that by "The Seaman's Aid Society in the city of Boston," the testator intended "The Seaman's Friends Society: *Tucker* v. *Seaman's Aid Society*, 7 Met. 188, both existing.

The Missouri cases are not authority under our statute. The statute in that state was absolute. The court, in *Bradley* v. *Bradley*, 24 Mo. 315, says: "Our statute is not like the Maisachusetts statute; for this has the provision in it, unless it shall appear that such omission was intentional, etc.: *Wilson* v. *Fosket*, 6 Met. 404. We are not able to reason ourselves clear from the effect of our statutes by anything said upon the subject by the Massachusetts courts; ours is a positive enactment, no proviso to it on account of mistake or intentional omission."

We think that our statute and the statutes of Massachusetts, Iowa, and California are in substance, meaning, and purpose precisely the same. Massachusetts was the

original source from which it was derived and adopted.
Before its adoption in California or in this territory it
had received an interpretation in Massachusetts and Iowa:
*Wilson* v. *Fosket*, 6 Met. 400; *Lorieux* v. *Keller*, 5 Iowa,
196, 203.

It was said in *Lorieux* v. *Keller* that "their [the
children's] right, if any, must first accrue on the death
of the testator. They do not claim under the will, but
in opposition to it, and they are seeking to supersede it.
The declaration of the testator at the time of executing
the will, that he had already given to his daughter, Made-
line Keller, her portion of his property, and that he in-
tended to make no further provision for her, were certainly
proper to show the intention of the testator in the dis-
position of his property by his will. These declarations
in no sense contradict, add to, or explain the contents of
the will. They were not offered for any such purpose,
but to show the circumstances under which the will was
executed, and the relations of the testator to persons and
things around him. Parol evidence certainly cannot be
given to change the provisions of the will from the con-
struction which the letter of the testament and the law
gives it. It cannot be varied, altered, or explained in such
mode. While we agree in holding this to be the law, we
must also hold that parol evidence is admissible when its
introduction is required by evidence extrinsic of the will,
when it tends to establish or sustain the will, or when it
consists of declarations of the testator, made at the time of
its execution, contemporary with the act, and showing its
legal quality. Such are parts of the *res gestæ.*"

"It is not contended but that it was competent for the
plaintiff, when his rights under the will are brought in
question, in some manner to establish the fact that the
omission by the testator to make provision in his will
for his children was intentional, and not the result of ac-
cident. How may he show it? Must it appear from the
will itself? The argument of the appellants would pre-
clude its being shown in any other manner. We are of the
opinion that it may be shown in any legitimate mode, by
extrinsic evidence, either written or parol, by the declara-

tions of the testator, at the time of executing the will, or by any act, circumstances, or admissions of the party, which will go to show that the defendants have received their portion of their father's estate, or that he intended to pass them by in his will."

The reasoning of the court seems to us to be conclusive and its conclusions sound. But it is argued that we took the section of the statute under consideration from California, and that it has received a different construction in that state, and that our legislature must be presumed to have adopted the statute with the construction put upon it by the courts of California. This rule is not absolute: *Cathcart* v. *Robinson*, 5 Pet., 264. The statute, as we have seen, was construed by Massachusetts and Iowa before it was adopted in California, and the California decision seems to us to be opposed to the weight of authority and of sound reason, and to be a departure from the prevailing interpretation. The case referred to is Matter of *Estate of Gerraud*, 35 Cal., 342. It assumes that the object of admitting extrinsic evidence in cases of this kind is to alter the terms of the will. The contrary is the case, for the evidence simply confirms and gives effect to the will. It attempts to distinguish the California from the Massachusetts statute, saying on page 342: "The case of *Wilson* v. *Fosket*, 6 Met., 400, is cited as authority in point to support the views of respondent's counsel. The Massachusetts statute differs very materially from ours, and the concluding clause is as follows, to-wit: 'Unless it shall appear that such omission was intentional, and not occasioned by any mistake or accident.' The last part of the clause is not found in our act, and we think it the key to the decision in *Wilson* v. *Fosket*. It opens the door for proof on the question whether or not the omission resulted from mistake or accident."

We think that the words "unless it shall appear that such omission was intentional," found in the Utah statute, opens the door for proof just as wide as if there had been added the words, "and not occasioned by accident or mistake." We prefer to follow what seems to be the better reason, supported as it is by the weight of author-

ity, and not to hold that the testimony objected to was admissible. As supporting our conclusion, we call attention to the fact that the earlier English authorities, and the authorities in this country, hold that parol evidence is admissible to rebut the presumption of a revocation of a will arising from a subsequent marriage and the birth of a child: *Brady* v. *Cubitt*, Doug., 31; *Brush* v. *Wilkins*, 4 Johns. Ch., 506. Chancellor Kent says in his commentaries that "it is generally agreed that the implied revocation by a subsequent marriage, and a child, being founded on the presumption of intention, may be rebutted."

2. The appellant also contends that the evidence admitted on the trial was insufficient to justify the finding that the testator intended to omit to provide for his children. It appears from the evidence that the mind of the testator was clear when he made the will. One of the witnesses swears that "he was as sensible as he ever was in his life." He had previously prepared the drafts of two other wills, which were before him when the will in question was drafted. These were in his own handwriting, and signed by him, and he called for them when the will at bar was drafted. Both these drafts omitted to provide for his children. A Mr. Campbell drafted the will, and the testator gave instructions as to what it should contain. The testator's wife, the defendant in this action, had lived with him for nearly thirty years, had raised his children, the youngest from babyhood, had worked hard, and helped to make the money with which the houses upon the lot were built.

The testator must have known that which is a matter of common knowledge, that his widow would have no right of dower in his property, that not being allowed in this territory. The property mentioned in the will was all the testator had, and he knew that if his wife received it all it would furnish her with but meagre support during her old age. The children had all attained maturity, were married, had homes of their own (chiefly bestowed on them by the testator and the defendant, his wife), and they were in comfortable circumstances—perhaps better off than the widow of the testator would be if she got all his property.

These and similar facts appearing in the record were all known to the testator when he made his will. That he did not forget his children, but that they must have been in his mind and intentionally omitted from his will appears from the fact that they had been omitted from the two previous wills, as well as this; that during this same illness, when he made the will, he sent for his daughters residing at a distance, to come to him, which they did, remaining some time, attending upon him, and nursing him. During his illness his boys were in daily attendance upon him, and he always recognized them. In the afternoon, before the will was made, the testator requested the doctor to bring Mr. Campbell to prepare it, who came the next morning. During that night his son John sat up with him, and the next morning, before the will was made, but in contemplation, all the boys were in to see him; and Henry testifies that he then seemed better than usual. They were all in again that day, after the will was made, and every day until his death. Under such circumstances it is impossible not to believe that the will, giving all his property to his wife, to the exclusion of his children, was the deliberate and intentional act of the testator, done with a full comprehension of the situation. That it was a just act John recognized, as appears from the testimony of Mrs. Paddock. We think that these facts, when taken in connection with the will itself, show that the testator intentionally omitted to provide for his children: See *Bulkley* v. *Gerard,* 125 Mass., 8; *Pelers* v. *Siders,* 126 Id., 135; *Lorings* v. *Marsh,* 6 Wall., 350. We have been greatly aided in the consideration and determination of this important question by the very able arguments of counsel for both sides, and the elaborate and exhaustive briefs presented.

Our conclusion is, that there is no error in the record, and that the judgment of the court below must be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.