BRIANT et al., Appellants, v. GARRISON et al.

Division One, June 14, 1899.

150 655
87a 266
150 655
167 457
150 6
175 3

1. **Will:** INTENTION OF TESTATOR. In construing a will the intention of the testator must be ascertained, if possible, and effectuated, unless it conflicts with some inflexible rule of law.

2. ———: ———: SUPPLY WORDS, ETC. In order to effectuate the meaning of a will, words may be supplied, transposed or changed.

3. ———: ———: ———: SAME RULE FOR DEEDS. And this rule applies to deeds as well as wills.

4. ———: ———: CONSTRUING "BETWEEN" TO MEAN "THROUGH." The manifest purpose of the testator as gathered from the whole will was to make ample provision for his wife for life, then for the children of a foster girl, and the "remainder" of his estate was to go to his brothers and sisters. The devise to the foster girl's children described the land as: "All that land situate east of the center line running north and south *between* sections eight and seventeen," etc. Section seventeen· lies due south of section eight, and the two were separated by a public road which divided testator's land about equally. He owned land in both the east and west halves of said sections. *Held*, that "between" used in the will to describe the land given to the girl's children ought to be changed so as to read "through," the mistake being one of the scrivener, and the change being in harmony with the statute requiring the courts to regard "the true intent and meaning of the testator."

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

MILTON MOORE and BURNEY & BURNEY for appellants.

(1) The instrument considered in connection with the plat showing sections, township and range, contains a patent ambiguity, and parol testimony is not admissible to alter, change, modify or explain it, nor to prove testator's intention. 1 Greenl. on Evid., p. 370; 2 Pom., Eq. Jur., sec. 871; Wigram on Wills (4 Ed.), p. 379; Jarman on Wills (3 Ed.), p. 379; Summers v. Summers, 5 Ontario 112; Hickey v. Stover, 11 Ontario 106; McFayden v. McFayden, 27 Ontario 598; Judy v. Gilbert, 77 Ind. 96; Mann v. Mann, 14 Johns. 9; Hardy v. Mathews, 38 Mo. 122; Bradley v. Bradley, 24 Mo. 315; King v. Fink, 51 Mo. 209; Ford v. Unity Church, 120 Mo. 506. (2) The plat referred to in the record is to be considered a part of the instrument. Dolde v. Vodecka, 49 Mo. 98; Jennings v. Brizeadine, 44 Mo. 332; Whitehead v. Ragan, 106 Mo. 231; Ford v. Unity Church, 120 Mo. 498. (3) In

cases where parol testimony is admissible to explain a latent ambiguity or a resulting trust, the evidence must be most clear and convincing. 2 Pom., Eq. Jur., sec. 859; Sweet v. Owens, 109 Mo. 7. (4) A court of equity will not undertake to correct the mistake of a draughtsman in writing a will. Sweet v. Owens, 109 Mo. 7. (5) Neither will a court of equity assume to reform a will, or other voluntary conveyance. Mulock v. Mulock, 31 N. J. Eq. 602; Sturgis v. Work, 17 Am. St. Rep. 350; Sherwood v. Sherwood, 36 Am. Rep. 760; Judy v. Gilbert, 40 Am. Rep. 290; Garner v. Bird, 57 Barb. 277; Acker v. Phoenix, 4 Paige Ch. 305; In re Walkeley Est., 41 Pac. 780; Cottman v. Grace, 19 N. E. 839; 2 Pom., Eq. Jur., sec. 871; Goode v. Goode, 22 Mo. 518; Anderson v. Scott, 94 Mo. 637; Brownlee v. Gerrick, 103 Mo. 421; Taylors v. Schroeder, 107 Mo. 206; Thomson v. Thomson, 115 Mo. 68; 22 Am. and Eng. Ency. of Law, 1030; Ford v. Unity Church Society, 120 Mo. 508. (6) In the construction of wills it is a well established rule that the law favors the heir or next of kin. Bane v. Wick, 19 Ohio 328; Walker v. Parker, 13 Pet. 166; 29 Am. and Eng. Ency. of Law, 352.

R. T. RAILEY for respondents.

(1) The will is set forth in the petition, and all the parties in interest, as well as all the evidence offered at the trial, are now before this court. The case should therefore be tried *de novo*, without any reference to the ruling of trial court, in respect to the admission or rejection of testimony. Reynolds v. Kroff, 144 Mo. 434; Green v. Ditsch, 143 Mo. 8; Parker v. Van Hoozen, 142 Mo. 627; Padley v. Neill, 134 Mo. 372; Lins v. Lenhart, 127 Mo. 281; Blount v. Spratt, 113 Mo. 48; McElroy v. Maxwell, 101 Mo. 308; Benne v. Schnecko, 100 Mo. 257. (2) In respect to the real estate unsold by the executor and executrix, the latter, at her death, simply held a life estate. Russell v. Eubanks, 84 Mo. 88; Harbison v.

James, 90 Mo. 426; Munro v. Collins, 95 Mo. 37; Redman v. Barger, 118 Mo. 575; Schorr v. Carter, 120 Mo. 416. (3) The will is sufficiently certain to be carried out, and "all that land situate east of the center line running north and south through sections 8 and 17" was devised to respondents. See 8916, R. S. 1889. The foregoing section has been emphasized, and liberally construed by the decisions of this State. Jamison v. Hay, 46 Mo. 553; Gaines v. Fender, 57 Mo. 346; Noe v. Kern, 93 Mo. 373; Suydam v. Thayer, 94 Mo. 55; Small v. Field, 102 Mo. 122; Long v. Timms, 107 Mo. 519; Garth v. Garth, 139 Mo. 462. (4) It is perfectly manifest, upon the face of the will in controversy, that testator's sole solicitations and desires, were concerning the Garrison children. He was attempting to provide for these children, even to the exclusion of his brothers and sisters. The rule is well settled, that "mere false description does not make an instrument inoperative." *Falsa demonstratio non nocet.* Broom's Legal Maxims (4 L. Ed.), sec. 606; Evans v. Greene, 21 Mo. 207; Gibson v. Bogy, 28 Mo. 478; Fenwick v. Gill, 38 Mo. 525; Jamison v. Fopiano, 48 Mo. 194; Rutherford v. Tracy, 48 Mo. 327; Cooley v. Warren, 53 Mo. 166; Shewalter v. Pirner, 55 Mo. 231; Railroad v. Green, 68 Mo. 177; Thomson v. Thomson, 115 Mo. 63; West v. Bretelle, 115 Mo. 653; Mitchener v. Holmes, 117 Mo. 208; Ford v. Unity Church Society, 120 Mo. 505; Presnell v. Headley, 141 Mo. 191; Eckford v. Eckford, 58 N. W. 1094. (5) It will be presumed that testator had in his mind the land which he owned, as it appears upon the plat. It could not be said that he intended to convey or devise that which he did not own. Riggs v. Myers, 20 Mo. 243; Creasy v. Alverson, 43 Mo. 21; Burnett v. McCluey, 78 Mo. 692; Presnell v. Headley, 141 Mo. 193; Eckford v. Eckford, 58 N. W. 1094; Stewart v. Stewart, 65 N. W. 977. (b) Testator had in his mind, as will appear from the express language used, a north and south line, and not one running "east and west." (7) He had in mind a center line running

north and south, and not one running east and west. (8) In construing wills, a court of equity is authorized to strike out, supply or transpose words, and, as in this case, to construe the word "between," as having been used in the sense of "through." Riggs v. Myers, 20 Mo. 242; Creasy v. Alverson, 43 Mo. 21; Gordon v. Burris, 141 Mo. 611; Hoffman v. Riehl, 27 Mo. 554; Burnett v. McCluey, 78 Mo. 676; Deal v. Cooper, 94 Mo. 65; Wolfe v. Dyer, 95 Mo. 545; Nichols v. Boswell, 103 Mo. 160; Thomson v. Thomson, 115 Mo. 56; West v. Bretelle, 115 Mo. 658; Mitchener v. Holmes, 117 Mo. 208; Ford v. Unity Church Society, 120 Mo. 505; Calloway v. Henderson, 130 Mo. 87; Presnell v. Headley, 141 Mo. 191; Kellogg v. Mix, 37 Conn. 247; Aulick v. Wallace, 75 Ky. 533; Bradley v. Rees, 113 Ill. 327. (9) If the word "between," as claimed by appellants, refers to an east and west line, as heretofore shown, it is a false description and should be rejected. If then, the description, with the word "between" rejected, is sufficient, with the aid of oral evidence, to point out the line intended to be described, such evidence is competent. Riggs v. Myers, 20 Mo. 242; Creasy v. Alverson, 43 Mo. 21; Gordon v. Burris, 141 Mo. 611; Wolfe v. Dyer, 95 Mo. 551; Noe v. Kern, 93 Mo. 373; Schorr v. Carter, 120 Mo. 415; Thomson v. Thomson, 115 Mo. 65; Watson v. Watson, 110 Mo. 170; Hall v. Stevens, 65 Mo. 677; Small v. Field, 102 Mo. 121; Nichols v. Boswell, 103 Mo. 157; Eckford v. Eckford, 58 N. W. 1093; Stewart v. Stewart, 65 N. W. 977.

MARSHALL, J.—This is a proceeding in equity to construe the will of A. C. Briant. The plaintiffs (except Sloan, the executor) are the heirs at law (brothers and sisters or their descendants) of the deceased, and the defendants are the children of Sallie Garrison, wife of Eli P. Garrison, referred to in the third clause of the will. The petition sets out the will of A. C. Briant, which after directing, first, the payment of his

debts, gives, second, a life estate to his wife Susan G., with power of sale, and then is as follows: "Third: In case my executors shall not in the lifetime of my said wife sell or dispose of the same then I desire and give unto the children of Sallie Garrison, wife of Eli P. Garrison, all that part of the land owned by me now and situate in Cass county, Missouri, to wit: All that land situate east of the center line running north and south between sections eight and seventeen in township forty-six of range thirty-three, said land to be equally divided among the said children of Sallie Garrison now living and hereafter to be born to her. Fourth. In case my said executors shall not in the lifetime of my said wife sell and convey the remainder of my real estate of which I may die seized I hereby desire that the same go to my brothers and sisters to be equally divided between them share and share alike," etc. The fifth clause provides for the management of the estate during the continuance of the life estate. The petition then alleges that conflicting claims have been set up by the devisees regarding the true construction of the will, the principal one being in reference to the third clause of the will, and averring: "That said clause being ambiguous and uncertain for the reason that the line running between sections 8 and 17 runs east and west instead of north and south. It can not be said what real estate is situate on the east side thereof. Plaintiff states that there are doubts arising as to the proper construction of said will upon the following questions: 1st. What interest and estate has Susan B. Briant in said real estate under the terms of the will? 2d. Is the said third clause in said will certain enough to be carried out, or is the same void for uncertainty; and, if valid, what land was devised thereby? 3d. What real estate was devised by the 4th clause in said will?"

The defendants, being minors, defended by their duly appointed guardian *ad litem,* R. T. Railey, and after admitting the allegations of the petition as to the will and the relation-

ships and character of the parties, and pleading the discharge of the executor and executrix, pleaded specially as follows:

"Said defendants for further answer state that under and by virtue of the terms and provisions of the will aforesaid, said A. C. Briant attempted to devise and bequeath to these defendants all that part of land which he owned in Cass county, Missouri, lying on the east side of the line drawn through the centers of sections 8 and 17 in township 46 of range 33; that through the mistake of the scrivener in writing said will, said land was described as follows: 'All that land situate east of the center line running north and south between sections 8 and 17,' etc.; that said description, where the word 'between' occurs should have contained in lieu thereof the following words: 'through the centers of sections 8 and 17.' That the intention of said testator to convey the land described last aforesaid appears upon the face of the whole instrument; that after the execution of said instrument, said testator in the presence of several persons, stated that he had conveyed all the land on the east side of a line drawn through the centers of section 8 and 17 by will to these defendants, and in addition thereto after the execution of said instrument went upon said land with other persons, and pointed the same out to them as the real estate which he had devised by will to these infant defendants; that his said widow, Susan G. Briant, and Chas. W. Sloan, as executors of the said estate, after they qualified as such and took charge of the same, recognized and treated the land described as lying on the east side of a line drawn through the centers of sections 8 and 17 aforesaid as the property of these defendants, and wound up said estate in accordance with such fact. That, as to other matters set up in the petition, these defendants have no information or knowledge sufficient to form a belief as to the truth or falsity of the same, and therefore ask the court to protect their rights in the premises. Said defendants further pray for a decree of this court correcting the instrument attached to the petition

herein as the last will and testament of said A. C. Briant, so as to strike out the word 'between' heretofore set out and insert in lieu thereof the words 'through the center of,' so that the land described as having been devised to these defendants shall be shown to be all that land lying upon the east side of a line drawn north and south through the centers of sections 8 and 17 aforesaid, and for such other and further relief as to the court may seem right and proper."

The reply was a general denial of the new matter in the foregoing answer.

For the purposes of this appeal, we adopt the statement of the appellant as to the proceedings upon the trial in the circuit court, which is as follows:

Plaintiffs to sustain the issues upon their part offered the following admissions:

"It is admitted that the plaintiffs herein, with the exception of C. W. Sloan, executor, are the heirs at law of A. C. Briant, deceased.

"It is admitted that the defendants are the minor heirs and only heirs of Sallie and Eli P. Garison; and that R. T. Railey was appointed guardian *ad litem* of said minor heirs.

"It is admitted that the plat, which is now identified and marked 'Exhibit A,' is a correct plat of the real estate owned by A. C. Briant at the time of his death."

The plat referred to is this:

## Township 46. Range 33.

**A. C. Briant Estate.**

"Upon these pleadings and admissions and plat the plaintiffs rested their case; and asked for the judgment of the court. Defendant demurred to this evidence on the ground that the will on its face showed that all the property of testator had been disposed of; which demurrer the court overruled.

"The defendant then offered parol evidence of numerous witnesses in support of their answer, and which they contend established the fact that the ambiguity in the will was caused by a mistake of the 'scrivener in writing the will' and 'that said description, where the word "between" occurs, should have contained in lieu thereof the following words: "Through the centers of sections 8 and 17." '

"This parol evidence was all objected to by plaintiffs on the ground that it was not competent nor material; that the ambiguity was patent and not such as could be explained or modified by parol testimony. The court heard all the testimony offered, subject to all legal objections, and finally, in passing on the case, admitted defendants' testimony on that issue.

"The evidence thus introduced by defendants, and to which exceptions are saved here, was in substance that the testator had no children; that Mrs. E. P. Garrison was brought up by him and his wife in their family and treated as their child, though not adopted as such; that during the lifetime of A. C. Briant he had made a gift to Mrs. Garrison of 160 acres of land, worth about $4,800; that he seemed to be very fond of the Garrison children; that in 1889 he said to one witness (Hamilton) that he intended the farm on which the 'Bane' house was situated for 'Sallie and the children;' that he told A. F. Blair that he had left most of his property to Sallie Garrison's children; that C. W. Sloan wrote the will and was co-executor with Mrs. Briant in administering the estate, and that during the life of Mrs. Briant, who occupied and used all the lands while she lived, witness Sloan had never heard that there was any ambiguity in the will.

"The father of the Garrison children, E. P. Garrison, was also permitted to testify that testator and he rode over the farm together and testator when he got about to the half section line which runs north and south, said to witness that he had re-written and made some changes in his will. This witness then testified as follows:

" 'Q. What change did he tell you he had made? A. He said he left the children all the land east of the central line.

" 'Q. Which central line? A. His central line, running north and south, running through the sections 17 and 8, and that was one change from the will I had written.'

"The court permitted this testimony, with the rest, over the plaintiff's objection.

"Defendants then offered to prove by the brother of testator, George W. Briant, that in August before the death of the testator, he and the witness were riding along the road, going east on the section line between sections 8 and 17, and testator said this was the line east and west dividing his farm, making about 333 or 334 acres in each farm, and one of these farms was for the Garrison children, and the other for his, testator's, brothers and sisters, and he motioned his right hand to the south to indicate the farm he intended for the children; also the evidence of Mrs. Maggie Moore, and Mrs. Sallie Moore, to the effect that testator had said that he made his will so that his brothers and sisters would be one heir and the Garrison children would share as one heir. This evidence the court excluded, because of the relationship of the witnesses to deceased.

"It was shown by the evidence of Mr. Frank Robinson and George W. Scott that the 188 acres of land left to testator's brothers and sisters according to the decree of the trial court, was worth $20 an acre, or about $3,760; while the 346 acres decreed to the defendants was of the value of $12,110,

and the whole of the land which the will, as construed by the court, left to defendants, was of the value of $17,940.

"On the testimony admitted the court sustained defendants' contention, and rendered a decree, vesting the title to the real estate in the parties to the controversy in accordance with the amendments and alterations to the will which the court held necessary to carry out the intention of the testator."

After unsuccessful motions for new trial and in arrest of judgment, plaintiffs have brought this cause here by appeal.

The will discloses that the testator had three purposes in view; first, to provide for his widow during her life; second, to make suitable provision for the children of Sallie Garrison; and, third, to give the "remainder" (used in its popular and not in its legal sense) of his property to his brothers and sisters. The mere reading of the will makes these purposes, in the order of priority stated, evident beyond debate. He gave his wife a life estate, coupled with power of sale, thereby guarding against the possibility of the rents, issues and profits not being adequate to her proper maintenance, which was his chief purpose, they having no children to consider, but he had so strongly in mind a desire to provide for the children of Sallie Garrison, whom he had reared and treated as a child, though never having adopted her as such, that he added: "It is not desired to restrict my said wife or her associate executor in the control or disposal of said property, but the desire is hereby expressed that my intentions hereinafter expressed with reference to the children of Sallie Garrison be carried out unless in the judgment of my executors a sale of the land devised to them should be deemed necessary or best." He plainly took thought of his brothers and sisters last, and only intended to provide for them after his wife and Sallie Garrison's children were fully taken care of, for he gave them only the "remainder" of his property, that is, what had not been sold for the benefit of his wife, and what was left after carving out the portion of his estate he designed for Sallie Garrison's children.

But those who owned the smallest estate in his affections now seek to expand their claims so as to take in all that the devisor intended for the children of Sallie Garrison.     There is no equity in their claim, nor do they assume any especial merit for it.     They base it solely upon what they claim to be the cold and inflexible rules of law, stripped of all sentiment or sense of gratitude for the bounty which their brother voluntarily left them.     We will measure their claim by the standard they have invoked.     Their claim briefly stated is this: The will gave Sallie Garrison's children, "All that land situate east of the center line running north and south between sections eight and seventeen in township forty-six of range thirty-three;" the map of township forty-six shows that section eight lies immediately north of section seventeen, hence there could be no land lying east of the center line running north and south between those sections; this constitutes an impossible description, hence there is a patent ambiguity which can not be explained by parol, and as no court has a right to make a will or to correct patent mistakes in it, this devise must fail, and to support their contention, they refer to text-writers and the Missouri cases of Goode v. Goode, 22 Mo. 518; Bradley v. Bradley, 24 Mo. 311; Hardy v. Matthews, 38 Mo. 122; Jennings v. Brizeadine, 44 Mo. 322; King v. Fink, 51 Mo. 209; Sweet v. Owens, 109 Mo. l. c. 7; and Ford v. Unity Church, 120 Mo. l. c. 506.

In all cases involving the construction of wills, section 8916, R. S. 1889, must be taken as the initial point.     It provides:    "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them.     This court has frequently decided that in construing a will the intention of the testator must be ascertained, if possible, and effectuated, unless it conflicts with some inflexible rule of law.     [Hogan's Heirs v. Welcker, 14 Mo. l. c. 183; Chiles v. Bartleson, 21 Mo. l. c. 346; Carr v.

Dings, 58 Mo. 1. c. 406; Munro v. Collins, 95 Mo. 1. c. 37; Small v. Field, 102 Mo. 1. c. 122; Redman v. Barger, 118 Mo. 1. c. 573.]    To accomplish this, words may be supplied, transposed or changed, as was done in Rines v. Mansfield, 96 Mo. 1. c. 398, where the words "his heirs" were changed to read "her heirs;" in Presnell v. Headley, 141 Mo. 1. c. 194, where the words "sixty rods" were changed to read, "one hundred and sixty rods;" in Thomson v. Thomson, 115 Mo. 67, where the words, "west one quarter of a mile," were supplied, and the words "thence south with said road one quarter of a mile" were rejected; in Nichols v. Boswell, 103 Mo. 1. c. 160, where the words "undisposed of" were supplied; and in Wolfe v. Dyer, 95 Mo. 545, where words describing the land were supplied so as to have the effect of cutting down the grant from two hundred and eighty acres to forty acres.    It makes no difference that some of these cases involved the construction of wills and some the construction of deeds, for the rule is the same in either case, the intention must prevail and it must be so construed "that the instrument may not perish and the manifest intention of the parties be not defeated by the palpable error of the scrivener," and "when the deed" (or will) "applied to the subject-matter shows a manifest omission in the description and there is sufficient data furnished by the deed" (or will) "to supply the omission, the omission will be supplied by construction."    See also Johnson v. Bowlware, 149 Mo. 451, where a description "west twenty rods" was changed to "east twenty rods."

Applying the principles settled by these cases to this case and we have this condition—the will calls for all the land lying east of the center line running north and south between sections eight and seventeen.   The face of the will does not show any difficulty.   But when we lay the map of the township alongside of the will the difficulty becomes apparent, for there is no center line running north and south between those

Briant v. Garrison.

sections, hence there is no land lying east of such a line.   A county road runs east and west along the line which divides sections eight and seventeen, but this can not be the line referred to in the will, for that is described as the center line running north and south between sections eight and seventeen, and this county road can not be the line intended, for the testator evidently intended to give Sallie Garrison's children land which lay partly in section eight and partly in section seventeen, and if we adopt this construction the manifest intention of the testator will be defeated.   Moreover if this had been the testator's intention he would have referred to the county road as the dividing line, and not to "the center line running north and south."   The analysis therefore produces this syllogism.   Major premise, Briant owned land in sections eight and seventeen, which sections lie north and south of each other.   Minor premise, Briant wanted to give Sallie Garrison's children the eastern part of the land he owned in sections eight and seventeen.   Conclusion, Briant made a will to carry out his intentions.   The will is defective because of the use of the word "between."   If that word is rejected and the word "through" is supplied, the defect in the will is removed, and the intention of the testator is carried out.   The question therefore resolves itself into this:   Shall this court reject the palpable mistake of the scrivener and supply the word which effectuates the intention of the testator, or shall it "stick in the bark" and hold that the will calls for an impossible description, that there is a patent ambiguity which can not be explained by parol testimony, and that the court is therefore bound to turn Sallie Garrison's children out of court and to give the whole property to the testator's brothers and sisters when he only intended them to have whatever was left, the remainder, after his wife and the Garrison children—his quasi children—had been provided for?

Justice, equity, good morals all favor the former construction.   It must prevail unless to do so conflicts with some

inflexible rule of law. "Patent ambiguity" is the inflexible rule invoked. On the one hand then we have an alleged patent ambiguity, and on the other a patent intention. Between the two, and as if to anticipate and settle such a conflict, the statute (sec. 8916) commands the court to have due regard to the directions of the will," and also to regard "the true intent and meaning of the testator." If there was an alternative of this kind presented by the record, our plain duty would be to follow the statute, for the will is a creature of the statute, the State's privilege to the testator to dispose of what, without the statute of wills and the statute of descents, would otherwise belong to the State. But there is no patent ambiguity on the face of the will. The ambiguity becomes patent only when we apply the extrinsic facts, of which we take judicial notice, to the face of the will, but this case does not make the ambiguity patent, it only presents itself because we know these facts and do not require proof of them as we do of those things that are not known by all men, or otherwise stated, judicial knowledge only dispenses with the necessity of proof of a fact the existence of which is extrinsic of the instrument to be construed or the condition predicated for a judgment, which is not the case here.

This is a proceeding in equity, and for this reason, particularly, the circuit court had the power to enter the decree it did, but as herein shown, by the cases cited, the same result could and would have been reached by construction if this had been a case at law. The conclusion reached by the circuit court carries out the plain and palpable intention of the testator as disclosed by the will without the aid of parol testimony, and is in consonance with the statute and the later adjudications of this court, and it is therefore affirmed.

All concur.