THOMSON *et al.* v. THOMSON, *Appellant.*

In Banc, March 20, 1893.

1. **Deed**: WILL: GENERAL AND SPECIAL WORDS: CONSTRUCTION. Where in a deed or will general words are used in describing the property conveyed or devised and such general description is followed by a more particular one, the general description will prevail over the particular one.

2. **Will**: GENERAL AND SPECIAL WORDS: CONSTRUCTION. A general description in a will of the devised property as "the tract of land on which I now reside" will prevail over a particular description by course and distance in case of a conflict between the two.

3. ——: ——: ——: PAROL EVIDENCE. Parol evidence is admissible to identify the residence tract and to ascertain the subject of the devise.

4. ——: OMITTED WORDS, SUPPLYING OF. Where it is obvious that from the words used and the general tenor and context of a will certain words or their substance have been omitted, such words may be supplied by construction.

5. ——: ——: PRIOR WILL AS EVIDENCE. A prior unattested will, indisputably genuine, is admissible to remove an ambiguity in the later one caused by conflicting descriptions therein and to identify the subject of the devise since the former will is in effect a written declaration by the testator.

6. ——: MISTAKE: EQUITY. Equity has jurisdiction to correct a mistake in the description of land devised by will, but the mistake to authorize the relief must be a clear one or a clear omission demonstrable from the structure and scope of the will itself.

7. ——: ——: RELIEF AT LAW. Relief it seems may in a plain case of such mistake be obtained without resort to equity.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

THE plaintiffs, who are respectively the brother, sister and brother-in-law of the defendant, brought ejectment for an undivided two sevenths of this tract of land, to-wit: The southeast quarter of section 1, township 51, range 20, and also that portion of the northeast quarter of the southeast quarter of the same section, township and range that lies north of the public road; but as to this, all claim was abandoned at the trial.

The forty in controversy, for the purpose of ready designation, has been marked on the subjoined plat "X," and the part sued for but disclaimed at the trial is marked "Y."

This litigation grows out of a controversy over the proper construction to be given to the following clause in the will of Robert Y. Thomson, the father and father-in-law of the respective litigants: "It is my will

that my beloved wife, Lucy T. Thomson, shall have for her own proper use and benefit the tract of land on which I now reside, described as follows: Beginning in the center of the east end of the lane on the Glasgow and Lexington road, thence north to the center of section 31, township 52, range 19 west, south of Missouri river, thence west one half mile to the center of said section on the west side, thence south to the southwest corner of said section, and still south one quarter of a mile (thence west one quarter of a mile), thence south one quarter of a mile, thence west one half quarter of a mile to the Lexington and Glasgow road, thence south with said road one quarter of a mile to the center of said road, thence east with said road in the center thereof to the beginning, during her natural life.''

The will was executed in 1863, and the testator died the same year. To Zachary Taylor Thomson, the defendant, was devised the remainder in the home tract after the termination of the life estate of his mother, who died in 1889. The letters A B C D mark the boundaries of the home tract, and, so far as they go, there is no dispute. From D, southward, the dotted lines represent the calls as contained in the will, and the lines around the litigated forty marked D E F show the north and west lines of that forty, and the letter G shows the point where the Lexington and Glasgow road turns south, and is one quarter of a mile west from the dotted line, and one eighth of a mile from the southwest corner of the forty, which corner is marked F. The lines designated by the letters D E F G show the lines claimed by defendant to be correct. There was no contention at the trial as to the correctness of the lines marked A B C D F G H A, or that they outlined and circumscribed the residence tract of the testator, as he regarded it when the will was drawn.

The part of the will already copied, inclusive of the words in parentheses, shows the description of the land as contained in an informal will made in 1860, and duly signed by the testator, on which is written just above the signature, as concluding words: "The above is my will, written by myself and my son Quincey, nobody else knowing anything about it." Removing the words in parentheses leaves the instrument just as it was formally executed in 1863.

There was testimony showing that the testator had used and regarded the "X" forty as part of his home tract and had fenced in that forty with that tract, and there was some testimony to the contrary.

There was evidence also showing that the widow of the testator had continuously occupied the "X" forty as part of the home tract, claiming it under the will ever since the death of the testator, and that since her death in 1889, her son, the defendant, had been the occupant, and that some years after the testator died, Jenkins, one of the co-plaintiffs, discovered, as he thought, a fault in the description of the land, which the heirs corrected by making a quitclaim to their mother; but this deed the plaintiffs, Thomson and Mr. and Mrs. Jenkins, refused to sign.

One clause of the will contained a provision for the sale of the remainder of the land of the testator, after satisfying the different devises contained in the will, and it seems that something less than one hundred and forty acres of land lying remote from the home tract was sold. Some of the tracts marked on the plat by initials show tracts of land devised by the father to his sons, but the will shows that several tracts had theretofore been conveyed to different sons or children; but as such tracts are not described by numbers or otherwise, it is impossible to tell where they lie. Mrs. Fowler however testifies that her father owned the

Thomson v. Thomson.

land that joined him on the west, south and east.

The answer set up a general denial and also an equitable defense based on the facts aforesaid; asserted that there was a mistake in the description of the land; claimed that it should be described as in the informal will; asked the court to supply the words in parentheses and correct the mistake. The statute was also pleaded in bar of the action.

After the evidence was all in the defendant asked for a declaration of law that plaintiffs were not entitled to recover, which the court refused, and thereupon gave judgment for the plaintiffs; hence this appeal.

*Shackelford & Montague* for appellant.

(1) The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of testator expressed in will shall prevail, provided it be consistent with rules of law. *South v. Bell*, 6 Pet. 75; *Nichols v. Boswell*, 103 Mo. 151. (2) It is respectfully submitted as to whether all distinctions between latent and patent ambiguities are not abolished by the statute and mistakes corrected to accord with manifest intention of testator, as in other equitable proceedings. Revised Statutes, 1879, sec. 4008. (3) There can be no doubt that the testator intended to include the forty acres in the general description of "The farm on which I reside." If this was his intention, as gathered from the whole instrument, the words "thence west three eighths mile," should be supplied in order to effectuate that intention. *Nichols v. Boswell, supra;* 1 Jarman, 456, and the authorities cited in first case; *Small v. Field,* 102 Mo. 104. (4) The evidence of a draft of a will made by the testator and proven to be in his handwriting, and in which the meandering was correct is clearly admissible to show his intention as to what he meant by his farm on which he resided. *Thompson v. Ish,* 99 Mo. 160. (5) Words evidently omitted may be supplied by intendment or by reference to co-relative parts of the will. In this case the latter description cannot be consistent without supplying the omitted course. 1 Redfield on Wills, 437; Willard's Equity, 490; *Vanechen v. Keater,* 63 N. Y.; *Hammett v. Hammett,* 43 M. D. 307; *Cornter v. Stagg,* 27 N. J. Eq. 305; 6 Wait's Actions & Defenses, 382, 383. (6) The attempted meanderings make an imperfect description, and is clearly a latent and not a patent ambiguity, and can be explained by parol evidence. 1 Strong on Equity Jurisdiction, 172. (7) A

former draft of will is admissible in evidence to show intent of testator. *Mueller v. Ass'n*, 73 Mo. 242, affirming 5 Mo. App. 390; *Langston v. Langston*, book 8, p. 167. (8) The court may look beyond the face of the will when there is an ambiguity on its face, and words evidently omitted in description may be supplied by construction. 2 Black, 408; *Rutherford v. Tracy*, 48 Mo. 325; *Hoffman v. Reihl*, 27 Mo. 554. And when one part of description is false and impossible, the false part should be rejected and by rejecting that a perfect description remains; the false part should be rejected. 2 Wait's Actions & Defenses, 503; *Kenny v. Kenny*, 3 Sett. 302. (9) The term "farm on which I reside" is a definite description, and parol evidence may be had to show what testator meant by "farm on which he resided." 20 Ohio St. Rep. construing will of James Taylor. *Taylor v. Boggs*, 516. (10) When a general description of property devised is given, followed by a specific description, as in this case, facts can be found to establish a mistake in specific description. *Pocock v. Reddingin*, 9 N. E. Rep. (Ind.) 473.

*John P. Strother* for respondents.

(1) A will cannot be amended in matter of description by extrinsic evidence. *Fitzpatrick v. Fitzpatrick*, 36 Iowa, 674; Abbott's Trial Evidence, sec. 88, p. 134; 1 Redfield on Wills, 497–8, secs. 3, 5, 6, 7, 8, 9, 10; also sec. 24, p. 620–21; *Bradly v. Bradly*, 24 Mo. 311; *Kurtz v. Hibner*, 55 Ill. 514; *Estate of Garraud*, 35 Cal. 336. Isaac Grant Thompson deduces two rules from the authorities including Wigram's fifth, sixth and seventh propositions in the first of which he says, "No evidence of mere mistake on the part of the testator or the draughtsman is admissible," and in the second of which he says, "No words can be added to

any description." Conclusion of note on page 673 of
8 Am. Rep; *Davis v. Davis*, 8 Mo. 56. Here defend-
ant seeks to add the words, "thence west one quarter
of a mile," whereby he endeavors to add forty acres of
land to his possession. (2) There is no latent ambi-
guity in this will and parol evidence is not admissible to
explain an ambiguity on the face of a will. *Davis v.
Davis, supra; Gregory v. Cowgill*, 19 Mo. 415. The
doctrine of this court is that a court of equity "has no
jurisdiction to reform a will on the ground of a mistake
in the draughtsman." *Goode v. Goode*, 22 Mo. 518.
The great weight of authority is against parol evidence
being admissible to vary or amend a will. *Barnes v.
Simms*, 5 Ired. Eq., 392; *Griscom v. Evans*, 11 Vroom,
402; *Sherwood v. Sherwood*, 45 Wis. 357; *Reynolds v.
Robinson*, 82 N. Y. 103; *Bishop v. Morgan*, 82 Ill. 351;
*Judy v. Gilbert*, 77 Ind. 96. The trial court then did
not err in excluding draught of former will of Robert
Y. Thomson. Authorities *supra passim*. (3) It is
believed that the Missouri cases wherein parol evidence
or a former draught of a will were admitted were cases
on issue of will or no will as to the question of fraud or
undue influence, etc., and never to add a clause.
*Pratt v. Coffman*, 33 Mo. 71; *Mueller v. Ass'n*, 73 Mo.
242; *Landis Case* and *Rule v. Maupin*, 84 Mo. 587.
(4) The will does not vest title in executors but clothes
them with a naked power to sell, and as they are dead
Mrs. Jenkins is not prevented from suing for the land
when there is no proceeds of sale to be held in trust for
her. 2 Washburn on Real Property, ch. 6, par. 22,
marg. p. 322.

SHERWOOD, J.—I. The rule in regard to descriptions
of land in a deed or will is that where general words
are used in describing the property conveyed or devised,
and such general description is followed by one

more particular, that in such case the general description shall prevail over the particular. Thus in *Rutherford v. Tracy*, 48 Mo. 325, a conveyance was made of a certain lot in a certain block, and superadded to that were words of a particular description, which actually embraced a less area than the lot mentioned; but this court applying the familiar rule just stated rejected the particular description as repugnant to the general intention. As shown in that case by WAGNER, J., this is the prevalent rule and not confined to any class of intruments.

In Greenleaf's Cruise on Real Property, the point is thus expressed: "The modern rule is to give effect to the whole and every part of the instrument, whether it be a will or a deed, or other contract; to ascertain the general intention, and permit it, if agreeably to law, whether expressed first or last to overrule the particular; and to transpose the words wherever it is necessary in order to carry the general intention plainly manifested into effect." 4. Greenleaf's Cruise on Real Property, ch. 12, sec. 26, note 1, and cases cited.

In *Lodge's Lessee v. Lee*, 6 Cranch, 237, the description was "all that tract or upper island of land called 'Eden,'" and then it was added, "beginning at a bounded maple," and describing the land conveyed by bounds, courses and distances, but so as not to include all the island. The court held that the whole island passed.

In *Keith v. Reynolds*, 3 Greenleaf, 393, the description was, "a certain tract of land or farm lying in *Winslow*, it being included in that tract which was granted" to Esq. Pattee, and afterwards there was added a particular description of courses and distances, which did not include the whole farm. It was contended that the particular description should prevail in preference to the other, which was more general and uncertain;

but it was decided that the first description was certain enough, and that it was to be adopted rather than the description by courses and distances, which was more liable to errors and mistakes.

In *Jackson v. Barringer*, 15 Johns. 471, the grant was, "the farm on which J. J. D. now lives," which was bounded on three sides, and "to contain eighty acres in one piece." The farm contained one hundred and forty-nine acres, and the decision was that the whole farm passed.

Now in the present instance, the words of general description are: "The tract of land on which I now live," followed by words of particular description. Under the rule stated, it would seem that there should be no difficulty if any conflict should arise between the general and the particular descriptions, to retain and uphold the former and reject the latter. 1 Jarman on Wills [6 Ed.] 481.

In this case there is evidence identifying the "X" forty as part and parcel of the home place or tract on which the testator resided at the time his will was executed and at his death. Fowler, a brother-in-law of Thomson, plaintiff, and of defendant, a disinterested witness, states that that forty was fenced in with the other land, *i. e.*, the home tract, by a fence which commenced at the Lexington road and ran around from that point on the west and north sides of the forty up to the southeast corner of Ham's land, and was under the widow's control all the time until her death; and Fowler was in a position to know, for he for some years had the place in cultivation, and there was other testimony of like import.

As before remarked, it was a conceded fact at the trial that the rest of the land except the "X" forty constituted the home tract, and parol evidence was obviously

competent to identify the home tract, to show what were its boundaries and how the testator regarded the matter. Abbott's Trial Evidence, 144; 1 Jarman on Wills [6 Ed.] 431, 432, 433, and cases cited; Wigram on Wills, 142; *Taylor v. Boggs*, 20 Ohio St. 516. This point is well illustrated in *Sanford v. Raikes*, 1 Mer. 646, where Sir William Grant in discussing the admissibility of extrinsic evidence in such cases observed: "I had always understood that, where the subject of a devise was described by reference to some extrinsic fact, it was not merely competent but necessary to admit extrinsic evidence to ascertain the fact and through that medium to ascertain the subject of the devise. * * * Here the question is not upon the devise but upon the subject of it. Nothing is offered in explanation of the will or in addition to it. The evidence is only to ascertain what is included in the description which the testator has given of the thing devised. Where there is a devise of the estate purchased of A, or of the farm in the occupation of B, nobody can tell what is given until it is shown by extrinsic evidence what estate it was that was purchased of A or what was in the occupation of B."

The fact that hundreds of acres of land were owned by the testator contiguous to his home tract, should not have the effect to destroy the probative force of evidence showing what the boundaries of the home tract were.

II. When the extrinsic evidence was introduced in this case to show the boundaries of the tract on which the testator resided, the controversy became centered alone on the "X" forty. The evidence thus properly introduced disclosed this state of facts: That by following the literal words of the will, and running the western boundary of the home tract as indicated by the dotted lines, the public road would not be reached by

exactly one quarter of a mile, nor would such dotted line go south with that road as required by the exact words of the will; but that if the words in parentheses were added to the description so that on reaching the southeast corner of Ham's land the course would be "thence west one quarter of a mile," no difficulty would be experienced in following the west line of the disputed forty, "thence south one quarter of a mile, thence west one half quarter of a mile to the Lexington and Glasgow road, thence south with said road one quarter of a mile," etc. It is true the distance of the last call is an error, but it is an error common to both descriptions, and it is true also that the dotted line could be extended west by legal implication one quarter of a mile in order to strike the Lexington and Glasgow road, but this would be the case even if that road were *ten miles* distant.

It would seem plain from the circumstances already set forth that an error in fact had occurred in the description of the lines in question; an error so palpable as to authorize the supplying by intendment of the evidently missing words, "thence west one quarter of a mile." Supplying these words all difficulty vanishes and all discrepancy ceases, except the one call after the Lexington and Glasgow road is reached, to-wit, "thence south with said road one quarter of a mile;" but the extra half quarter of a mile can be exscinded by applying two legal principles, one the maxim of *falsa demonstratio, etc.;* the other in regard to monuments controlling rather than distances.

In relation to supplying words where it is obvious that from the words used and the general tenor and context of the instrument that certain words or their substance has been omitted, such words may be supplied by construction. This was so ruled by this court in regard to a deed. *Hoffman v. Reihl*, 27 Mo. 554. See also 4 Greenleaf's Cruise on Real Property, ch. 20, sec.

29, and cases cited; *Holden v. Raphael*, 4 Adolph. and El. 228; *Say and Seal's Case*, 10 Mod. 45; *Flight v. Lord Lake*, 2 New Ca. 72. A similar ruling was recently made by this court in regard to a will. *Nichols v. Boswell*, 103 Mo. 151, and cases cited.

Where it is clear on the face of a will that the testator has not accurately or completely expressed his meaning by the words he has employed, and it is also apparent what words or their substance have been omitted, these words may be supplied to effectuate the intention as collected from the context. 1 Jarman on Wills [6 Ed.] 487, *et seq.*; 6 Wait's Actions & Defenses, 382, 383.

And it is conceived that the circumstances of this case do not affect the application of this principle, where the necessity of supplying the missing words is shown by applying the words of the will to the *locus in quo* and then showing by parol evidence and by necessary and inevitable inference from that and the words of the will that a palpable omission has been made in the written description.

III. The next point for discussion is whether the informal will executed in 1860 should have been admitted in evidence.

This instrument, as already stated, came from the proper custody and was duly signed by the testator, and the third clause, over which this litigation arose, was in the handwriting of the testator. Such instruments have heretofore been declared admissible by this court where the question was one of undue influence; and a will executed three years before was admitted in order to show an intention on the part of the testator in designating the objects of his bounty. *Mueller v. Hospital Ass'n*, 73 Mo. 242; *Thompson v. Ish*, 99 Mo. 160.

In the latter case just cited it was ruled that it was

immaterial whether the former will was formally executed or not. In the present case the genuineness of the instrument is indisputable, and by that instrument all doubt or question as to the description of the property intended to be devised is put at rest. Now it is clear that the declarations of a testator are receivable as to the subjects or objects of his bounty, where a latent ambiguity arises. 1 Redfield on Wills [3 Ed.] par. 7, *et seq*, p. 560. And it is difficult to see why for similar reasons a former will may not be received to identify the subject of the devise, as well as such declarations. Indeed it may be said that on this point a greater degree of reliability should be placed on the declarations contained in a written instrument, in reference to the description of property than where such declarations rest in the depository of slippery memory. And we find authorities holding that such former wills may be admitted in evidence to identify the object of the bequest. *In re Feltham's Trusts*, 1 K. & J. 532; *Re Gregory's Settlement*, 6 N. R. 282. Wharton says: "Wherever extrinsic facts are admissible, the testator's writings may be included among such facts. Thus, where a testator directed in his will that all moneys which he had advanced or might advance to his children, 'as will appear in a statement in my handwriting,' should be brought into hotchpot, the court, in addition to other extrinsic evidence of the nature and amount of the advances, admitted an unattested document, which, after the date of the will, had been drawn up by the testator with the apparent view of furnishing a guide to his trustees on the subject. On the same principle, proof of extrinsic facts will be admitted to identify an imperfectly executed testamentary paper, if the object be to incorporate that document with a duly attested codicil, which refers in general terms to the testator's 'last

will.'''  2 Wharton on Evidence [3 Ed.] sec. 1003a;
*Whately v. Spooner*, 3 K. & J. 542; *Allen v. Maddock,*
11 Mod. P. C. 427.

All these cases related to the *object* of the testator's
bounty; but such cases are not distinguishable in prin-
ciple from those where the purpose is to discover the
*subject* of the testator's bounty.

In *Doe dem. Beach v. Earl of Jersey*, 3 B. & C.
870, an ambiguity was created by reason of the testa-
trix describing the subject of her devise as *"all that my
Briton Ferry Estate"* with all the manors, etc., lying
in the county of *Glamorgan;* but it was shown that
there was *"no manor of Briton Ferry."*  A claim was
made under this devise for lands which lay neither in
the parish of Briton Ferry, nor in the county of
*Glamorgan;* but in the county of *Brecon,* and it was
ruled that certain old account books of the estate were
admissible in evidence in which was the following
entry: "Briton Ferry Estate in the county of Brecon,"
on proof that the lands and others had all gone by the
name of the "Briton Ferry Estate."  On these author-
ities and for the reasons given, the unattested former
will should have been admitted in evidence.

IV.  Relative to the prayer in the answer that the
mistake in the will be corrected, there is no question
but that a court of equity has jurisdiction to grant this
sort of relief, upon a proper case made; "but the
mistake, in order to lead to relief, must be a clear
mistake or a clear omission, demonstrable from the
structure and scope of the will." 1 Story's Equity
Jur. [13 Ed.] 191, and cases cited; 1 Jarman on Wills
[6 Ed.] 417, note 1, and cases cited.

The authorities show that the same degree of
certainty and strictness is requisite in correcting a
mistake in a will as is necessary when words are to be
supplied; otherwise the result would be to *re-form* the

will, which, of course, is not admissible. *Goode v. Goode,* 22 Mo. 518. But·in a case like this one, so plain in its facts, and so plain in its law, it would seem that small need exists to invoke equitable inter-position.

V. The plea of the statute cannot avail the defend-ant, because his mother simply claimed under the will and not otherwise, and hence could not be said to hold adversely.

The result of our views is that the judgment is reversed and the cause remanded, in which all concur, except BARCLAY, J., absent, and GANTT, J., dissenting.

GANTT, J. *(dissenting.)*—The following plat was offered and read in evidence:

The trial court, having excluded the paper writing or unattested will of 1860, which was offered to show the intention of the testator as to the boundaries of the land described in his will "as the tract on which I now reside," found for plaintiffs.

This action of the court constitutes the principal ground of this appeal, and requires us to determine whether the unattested draft of a will of the testator, signed by him, was competent to aid the court in arriving at his intention. In the construction of a will the intention of the testator must be gathered from the will itself and all its parts, and that intention must govern. *Bradley v. Bradley*, 24 Mo. 311.

It is most clearly settled that when the language employed in the will is clear and of well-defined meaning, extrinisic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge or contradict the language thus used, but the will must stand as it is written.

Sir James Fitzjames Stephens, in his excellent Digest of the Law of Evidence, art. 91, p. 108, says, "Putting a construction upon a document means ascertaining the meaning of the signs or words made upon it, *and their relation to facts.* * * * In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers or may probably have been intended to refer, or which identifies any person or thing mentioned in it." In thus proving these facts the rule forbidding the introduction of parol evidence to vary or contradict a written instrument is not infringed.

If, after a careful comparison of all parts of an instrument, the court is in doubt as to the intention of the grantor upon some particular point in the will, it will admit extrinisic evidence of the circumstances and surroundings of the testator at the time he made the

will; in other words, as nearly as possible, it will put itself in the testator's place.

In this case, the intention of Robert Y. Thomson to devise "the tract of land on which he then resided" to his wife for life, remainder in fee to the defendant Zachary, is perfectly clear. There is no uncertainty of person as to his devisees. Had he merely used the words "the tract on which I now reside," the only inquiry necessary would have been the extent and boundaries of that tract, and there could be no doubt as to the propriety of the court admitting evidence to prove the boundaries of that tract, but the testator did not stop with this general description; he defined his home place by certain metes and bounds, and appellant claims that he made a mistake in so doing; that by omitting one call for a quarter of a mile west from the northeast corner of the southeast quarter of the northeast quarter of said section 1, he unintentionally cut off this forty acres from the home place.

The trial court admitted evidence on both sides as to the extent of the home place and there was evidence that not only this forty had been used and cultivated by the testator in his life time, but the eighty acres immediately west of it also, which he had devised to his son Alvin.

The trial judge excluded the unattested paper or will offered by appellant to show the intention of Robert Thomson as to the boundaries of "the tract on which he resided," and this ruling is assigned as error.

In *Bradley v. Bradley*, 24 Mo. 311, Judge Ryland quotes with approval the language of Chief Justice THOMPSON, in *Mann v. Mann*, 14 Johns, p. 1: "It is conceived that there is in principle an objection to the reception of the *declarations of intention*. When a person executes a written instrument (whether a will or deed or written agreement) he must be supposed to express

and embody in the instrument all he has to say of his intention. Thenceforward his intention is to be collected only from the instrument; reference also being allowed when necessary to surrounding material facts and existing circumstances. * * * And the ground and reason on which the principle is founded must obviously be on account of the great danger and inconvenience which would result from evidence of declarations well described by Lord Coke as the 'nude averments of parties to be proved by the uncertain testimony of slippery memory.' * * * If declarations are alleged to have been made before or after that time, what complete assurance have we in all cases that the intention of the party at the time of executing the instrument was the same as before that time or had not been altered afterwards.''

Now it is evident the paper offered could only have the effect of a declaration of Robert Y. Thomson. It could have no force as a will, nor could it be admitted to show his intention. It was extrinisic evidence and the law excludes it, and the trial court committed no error in so holding. *Davis v. Davis*, 8 Mo. 56; *Fitzpatrick v. Fitzpatrick*, 36 Iowa, 674; *Estate of Garraud*, 35 Cal. 336; *Kurtz v. Hibner*, 55 Ill. 511. For a review of this last case see Chicago Legal News, March 18, 1871. *Graham v. Graham*, 23 W. Va. 36; *Augustus v. Seabolt*, 3 Metc. (Ky.) 155.

II. The only other assignment of error is the refusal of the circuit court to instruct that under the evidence the plaintiff could not recover. It is assumed by this proposition that there was enough on the face of the will itself to justify the court in supplying the call claimed to have been omitted. This proposition is much more plausible after we have seen the unattested will that was excluded, but it is our imperative duty in my opinion to disregard that paper altogether, and

decide the case as if it had never existed in fact, as it never has in law.

Let us first apply the description in the will to the lands left by Robert Thomson, "Beginning in the center of the east end of the lane on the Glasgow and Lexington road, thence north to the center of section 31, township 52, range 19, thence west to the center of said section on the west side, thence south to the southwest corner of said section, and still south one quarter of a mile, thence south one quarter of a mile." We have absolutely no ambiguity up to this point in the description, but the next call is as follows: "Thence west one half of a quarter of a mile to the Lexington and Glasgow road." Now the evidence was undisputed that this call of a half a quarter would fall short of the said road one quarter of a mile, but applying the well established rule of law, that fixed monuments must govern a mere call for distance, we proceed on the elongation of this line and are brought to the Glasgow and Lexington road, "thence south with said road *one quarter of a mile* to the center of said road." Here again the fixed monument, the road itself must control and we must reject one half of a quarter in distance because there is only a half quarter to the road and "thence (we follow the road) east with said road in the center thereof to the beginning." So that it is perfectly apparent that if we trace these boundaries calling to our aid the law which requires us to be governed by fixed monuments, there is no ambiguity on the face of this will at all, and we have no foundation for supplying anything to aid it.

But if we supply the call for defendant, and run west as he asks us to do, "thence south one quarter of a mile, thence west one half of a quarter, we reach the Glasgow-Lexington road," and now unless we invoke the same rule of law in regard to the permanent monu-

ment, the road, we go a half quarter below the road, which we cannot do unless we reject all the remaining calls. So that in any event we must resort to this rule of description. But if we are bound to resort to it for defendant after *interpolating a call for a quarter of a mile,* which is not in the will, are. we not bound by every consideration of law to resort to it in the first instance to see whether there is in fact any ambiguity, and, if by using the method which the law prescribes *we find a clear, definite boundary,* is there any excuse for resorting to the doubtful expedient of importing unwritten words into a man's will? I think not.

I recognize the rule of construction that where there is a good and sufficient general description, followed by an uncertain and insufficent particular description, the courts reject the indefinite particular description; but can we apply that rule here? The general description itself is indefinite. "The tract on which I now reside" was a part only of a large body of lands. It appears from other items of the will he had devised parts of it to the other children. So he did not intend to give it all to his wife. And again, if we would construe it to mean that portion only which was cultivated and used as his home farm, the will itself negatives this, because it appears he devised to Alvin eighty acres of this cultivated land. Is it not clear that the testator *intended to carve out of his lands a tract for his widow and son Zachary, giving them the improvements?* We think this purpose is clear: Now the rule is clear that where a general description is followed by a specific description the latter will control if it is definite. That the specific description is absolutely definite, we think there is no doubt, and it should control.

The presumption against intestacy is negatived by the evidence that he left one hundred and twenty-eight acres besides the forty acres in dispute to be sold by

his executors.   Schouler on Wills, sec. 515; 1 Jarman on Wills, 761.   The quit-claim by the heirs to their mother in no way affects the merits of the case nor the right of the plaintiffs, nor was there any evidence whatever to sustain the statute of limitations, neither can we hear the objection that Mrs. Jenkins is incompetent to sue. ˙ No such issue is in the case.

I think the circuit court correctly ruled and the judgment should be affirmed.